IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 17-cv-00806-RBJ

AMBROSE D. MARTINEZ,

 Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration,

 Defendant.

## ORDER

  This matter is before the Court on review of the Social Security Administration ("SSA") Commissioner's decision denying claimant Ambrose D. Martinez's application for supplemental security income benefits under Title XVI of the Social Security Act. Jurisdiction is proper under 42 U.S.C. § 405(g). For the reasons explained below, the Court AFFIRMS the Commissioner's decision.

## STANDARD OF REVIEW

  This appeal is based upon the administrative record and the parties' briefs. In reviewing a final decision by the Commissioner, the District Court examines the record and determines whether it contains substantial evidence to support the Commissioner's decision and whether the Commissioner applied the correct legal standards. *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996). A decision is not based on substantial evidence if it is "overwhelmed by other evidence in the record." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988). Substantial evidence requires "more than a scintilla, but less than a preponderance." *Wall v. Astrue*, 561

1

F.3d 1048, 1052 (10th Cir. 2009). Evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Reversal may also be appropriate if the Commissioner applies an incorrect legal standard or fails to demonstrate that the correct legal standards have been followed. *Winfrey*, 92 F.3d at 1019.

## BACKGROUND

Mr. Martinez was born in 1986 and was 27 years old at the alleged disability onset date. R. 35. He graduated from eighth grade but did not graduate from high school or obtain his GED. R. 36. Though he held a part-time job in the past, Mr. Martinez has never worked full-time. R. 43. He lives in Pueblo, Colorado with his girlfriend and his girlfriend's grandchild. R. 49. Mr. Martinez reports that while he occasionally does the dishes and takes out the trash, his girlfriend does the majority of the household chores and childcare. R. 43–45.

Mr. Martinez has a history of alcohol abuse. He started drinking at the age of 12, and since that time he has received three DUIs and has undergone court-ordered alcohol treatment. R. 39. In addition to his drinking problem, he also has social anxiety, depression, and a learning disability. R. 18. Mr. Martinez has no reported or alleged physical disabilities.

### A. <u>Procedural History</u>.

Mr. Martinez filed a claim for supplemental security income on June 18, 2013. R. 15. After Mr. Martinez failed to appear at his December 1, 2014 hearing, the administrative law judge ("ALJ"), Kathryn D. Burgchardt, dismissed his claim. R. 78. The Appeals Council remanded his case back to the ALJ for a determination of whether Mr. Martinez had good cause for missing the hearing. R. 84–85. At the resulting November 17, 2015 hearing the ALJ found that Mr. Martinez did not have good cause but allowed his claim to proceed nonetheless. R. 29–35. The ALJ issued an unfavorable decision on January 28, 2016. R. 10. Mr. Martinez appealed

2

this decision, but the Appeals Council denied Mr. Martinez's Request for Review on February 23, 2017.  R. 1–3.  Mr. Martinez timely sought review by this Court.  ECF No. 1.

   B. **The ALJ's Decision.**

The ALJ issued an unfavorable decision after evaluating the evidence according to the SSA's standard five-step process.  R. 13–21.  First, the ALJ found that Mr. Martinez had not engaged in substantial gainful activity since his alleged onset date.  R. 15.  At step two, the ALJ found that Mr. Martinez's learning disability, anxiety, depression, and alcohol abuse were severe when viewed in combination.  *Id.*  However, the ALJ found that the following alleged conditions did not represent medically determinable impairments or were nonsevere: hypertension, mixed hyperlipidemia, and obesity.  *Id.*  At step three, the ALJ concluded that Mr. Martinez did not have an impairment or combination of impairments that met or medically equaled a Listing.  R. 16.  Also during this step, the ALJ assessed Mr. Martinez's mental impairments in accordance with the psychiatric-review technique required by Social Security regulations.  *See* 20 C.F.R. § 416.920a.  This technique required the ALJ to assess the degree to which Mr. Martinez's mental impairments limit his functioning in four areas: (1) daily living; (2) social functioning; (3) concentration, persistence, and pace; and (4) episodes of decompensation.  *Id.*  The ALJ found that Mr. Martinez had a mild restriction in activities of daily living and moderate difficulties in both social functioning and concentration, persistence, and pace, but that Mr. Martinez has had no episodes of decompensation of note.  R. 16.

The ALJ then found that Mr. Martinez retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following limitations: the work must be unskilled; the work must have a specific vocational preparation ("SVP") level of 2 or less; the work cannot be in close proximity to co-workers, supervisors, as a member of a team,

and cannot have prolonged contact with the public; and the work must involve minimal to no reading, writing, or math. R. 17.

At step four, the ALJ noted that Mr. Martinez has no past relevant work. R. 19. At step five, the ALJ determined that there are jobs in the national economy that Mr. Martinez is able to perform, such as a small products assembler, a housekeeper, or a commercial cleaner. R. 20. As a result, the ALJ concluded that Mr. Martinez is not disabled. R. 23.

## DISCUSSION

Mr. Martinez contends that the ALJ erred in the following ways during the RFC determination: (1) by giving only limited weight to Dr. Degroot's opinion; (2) by giving Dr. Wanstrath's opinion more weight than Dr. Degroot's; and (3) by failing to precisely follow Dr. Wanstrath's mental limitation findings. The Court will discuss each argument in turn.

### A. **Dr. Degroot's Opinion.**

The ALJ determined that Mr. Martinez has the RFC to work an unskilled job subject to a number of limitations. R. 17. The ALJ made this determination based largely upon the findings of Dr. Wanstrath and Dr. Degroot. Dr. Wanstrath determined that Mr. Martinez can follow simple instructions, sustain ordinary routines, and make simple work-related decisions, but that Mr. Martinez cannot work closely with supervisors, co-workers, or the general public. R. 73. Dr. Degroot echoed this finding—noting that Mr. Martinez is capable of routine, repetitive work and that "his social fears and self-protectiveness make it difficult to get along with others"—but also found that Mr. Martinez is moderately limited in his ability to understand, remember, and carry out simple instructions and that he is extremely limited in his ability to respond appropriately to usual work situations and changes in a routine work setting. R. 386.

4

Mr. Martinez asserts that the ALJ erred when she accounted for some of Dr. Degroot's mental limitation findings but omitted others without explanation. ECF No. 14 at 4. In particular, Mr. Martinez argues that the ALJ's determination that Mr. Martinez can perform "unskilled" work does not take into account Dr. Degroot's findings that Mr. Martinez is moderately limited in his ability to understand simple instructions and extremely limited in his ability to respond to usual work situations and changes to the routine work setting. Because "unskilled work, by definition, requires the ability to understand, carry out, and remember simple instructions and to respond appropriately to usual work situation and changes in a routine work setting," Mr. Martinez argues that Dr. Degroot's restrictions therefore disallow unskilled work. *Id.* at 6. As such, Mr. Martinez argues that the ALJ erred in her RFC determination that Mr. Martinez is capable of unskilled work, or at the very least, that the ALJ erred because she failed to explain why she did not account for Dr. Degroot's limitations in her RFC finding. *Id.* This argument fails because I find that the ALJ sufficiently explained her treatment of Dr. Degroot's limitations findings.

In formulating the RFC, an ALJ is required to consider examining physicians' opinions about a claimant's restrictions and to provide specific, legitimate reasons if she decides to reject them. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). Here, in explaining her treatment of Dr. Degroot's limitations findings, the ALJ noted that Dr. Degroot did not discuss Mr. Martinez's limitations with much specificity and therefore "his opinion is of limited probative value in the context of a function-by-function analysis." R. 18. Further, the ALJ took issue with the fact that Dr. Degroot partially based his findings on an IQ score that the ALJ determined to be invalid. The ALJ found that the IQ score lacked validity because the doctor who oversaw the

IQ test, Dr. Valette, opined that Mr. Martinez appeared to put little effort into the testing and thus the results were to be interpreted with "extreme caution." *Id.*; *see Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (noting that the ALJ reasonably discounted a physician's opinion in light of evidence of the claimant's "propensity to exaggerate her symptoms and manipulate test results").

In addition to explaining why she gave limited weight to Dr. Degroot's social limitations findings, the ALJ also took pains to explain why the other evidence in the record convinced her that Mr. Martinez can perform unskilled work. First, she noted that "the claimant's scores viewed together paint a picture of an individual who is capable of functioning at a much higher level than he alleges." *Id.* at 19. In that same vein, the ALJ noted that Mr. Martinez appeared to report increased inability to perform daily activities as his case progressed, which suggests he was exaggerating the extent of his limitations in order to help the claim succeed. *Id.*; *see Bean v. Chater*, 77 F.3d 1210, 1213 (10th Cir. 1995) (ALJ noting that the claimant described a wide array of daily activities at the outset of the application process, but alleged increasingly significant restrictions as claim progressed). Thus, the ALJ determined that even if Mr. Martinez is socially limited to some degree, "it is difficult to attribute that degree of limitation to his medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this opinion." *Id.* Further, the ALJ pointed to mental examinations spanning from November 2013 to August 2015 that showed that Mr. Martinez had functional abilities that could support an RFC for unskilled work. *See* R. 406, 402, 399, 487, 500, and 506. The ALJ also pointed to medical records that showed that Mr. Martinez was cooperative, indicating the ability to interact appropriately with others. *See* R. 16, 327, 334, 346, 385, 388, 420, 434. Therefore, I find that the ALJ properly explained her decision to disregard

Dr. Degroot's limitations findings and ultimately determine that Mr. Martinez can perform unskilled work. As such, Mr. Martinez's first argument must fail.

## B. <u>Relative Weight of Dr. Wanstrath's and Dr. Degroot's Opinions</u>.

Mr. Martinez next takes issue with the fact that the ALJ gave more weight to Dr. Wanstrath's opinion in the RFC determination than she gave to Dr. Degroot's opinion. Although both Dr. Wanstrath and Dr. Degroot are non-treating physicians, Dr. Degroot personally examined Mr. Martinez during the claims process whereas Dr. Wanstrath only reviewed his medical records. *Id.* at 12. "The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all." *Robinson*, 366 F.2d at 1084. Based on this hierarchy, Mr. Martinez argues that the ALJ erred in giving greater credence to Dr. Wanstrath's opinion than she did to Dr. Degroot's opinion, or alternatively, that the ALJ should have explained her reasons for doing so in greater detail. I disagree.

Despite the presumptive hierarchy of medical source opinions, an ALJ is entitled to assign more weight to one medical source than she assigns to others as long as substantial evidence supports the result and the ALJ explains her reasons for doing so. *Doyal*, 331 F.3d at 764. Here, in explaining her relative treatment of the doctors' opinions, the ALJ noted that Dr. Degroot did not conduct a detailed assessment of Mr. Martinez's social functioning limitations. R. 18. Instead, Dr. Degroot simply opined that "the claimant's social fears and self-protectiveness make it difficult to get along with others." *Id.* at 18. In contrast, Dr. Wanstrath completed the four-part Psychiatric Review Technique assessment, which consists of an in-depth evaluation of all of Mr. Martinez's medical records and the opinions of other evaluating physicians. R. 16. Thus, the ALJ relied more heavily on Dr. Wanstrath's more detailed

assessment. The ALJ also noted that she found Dr. Wanstrath's assessment to be consistent with and supported by the evidence as a whole, but that she did not find Dr. Degroot's findings to be consistent with the evidence as a whole (as discussed in the section above). Therefore, the ALJ properly articulated why she assigned Dr. Wanstrath's opinion more weight than Dr. Degroot's. As a result, Mr. Martinez's second argument fails.

C. **<u>Treatment of Dr. Wanstrath's Opinion.</u>**

Finally, Mr. Martinez argues that the ALJ gave significant weight to Dr. Wanstrath's opinion yet failed to properly implement all of Dr. Wanstrath's mental limitations findings into the RFC calculation. ECF No. 14 at 16. In particular, Mr. Martinez takes issue with the verbiage that the ALJ used in describing Dr. Wanstrath's opinion about Mr. Martinez's capacity to work with others. *Id.* Dr. Wanstrath determined that Mr. Martinez cannot work "in close proximity to co-workers or supervisors." R. 73. The ALJ discussed this opinion in her RFC determination by writing "the claimant requires work that is . . . not in close proximity to co-workers or supervisors (meaning the claimant cannot function as a member of a team)." R. 17. Mr. Martinez argues that the ALJ erred in categorizing his limitation as an inability to work as part of a team. He argues that a limitation that he cannot work with supervisors and coworkers "is far more restrictive than the ALJ's mere prohibition of team membership," and therefore the ALJ erred in making this unexplained "deviation" from Dr. Wanstrath's opinion. ECF No. 14 at 16.

This argument borders on frivolous. This Court finds no substantive difference between these two descriptions, and Mr. Martinez has failed to provide an explanation as to how this slight alteration of language constitutes reversible error. Further, despite the fact that the ALJ placed in parentheses that Mr. Martinez's limitation meant he was unable to work as a member

8

of a team, the ALJ *also* noted in the same sentence that Mr. Martinez could not work "in close proximity to co-workers or supervisors." R. 17. The ALJ did not "deviate from Dr. Wanstrath's limitations on contact with supervisors and coworkers"—she expressly included it within the RFC. ECF No. 14 at 7. As such, this argument fails.

## ORDER

For the reasons described above, the Court AFFIRMS the Commissioner's decision denying Mr. Martinez's application for supplemental security income benefits.

DATED this 24th day of January, 2018.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge